UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GINGER L. JONES and ESSIE RANKIN,

                  Plaintiffs,      12-CV-6210

                                 **DECISION**
          v.                   **and ORDER**

ROCHESTER INSTITUTE OF TECHNOLOGY;
DIRECTOR CHRIS DENNINGER, individually;
and SUPERVISOR JAMES PRESSEY, individually,

                  Defendants.

## INTRODUCTION

Plaintiffs, Ginger L. Jones ("Jones" or "Plaintiff Jones") and Essie Rankin ("Rankin" or "Plaintiff Rankin"), bring this action pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*, ("Title VII"); and Section 290 of the New York State Human Rights Law, Executive Law § 290, *et seq.*,("Human Rights Law"), against Defendants, the Rochester Institute of Technology ("RIT" or "Defendant RIT"), Director Chris Denninger ("Director Denninger" or "Defendant Denninger") and Supervisor James Pressey ("Supervisor Pressey" or "Defendant Pressey"), alleging discrimination based on race and gender. (Dkt. No. 34 at ¶ 1). Specifically, Plaintiffs allege that Defendants subjected them to an ongoing discriminatory and hostile work environment because of their identities as African-American women,

and have retaliated against them for opposing the allegedly discriminatory treatment they received. <u>See id.</u> at ¶¶ 1, 132-243.

Defendant Pressey moves to dismiss the claims against him individually set forth in Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") on grounds that Plaintiffs have failed to state a claim against him under Section 1981 or the New York State Human Rights Law. <u>See generally</u>, Dkt. No. 37, 40. Supervisor Pressey argues that Plaintiffs have failed to state a plausible claim against him individually for discrimination based on a hostile work environment because their claims are based on alleged conduct that does not rise to the level of "severe or pervasive" conduct as is required to state such a claim. <u>Id.</u> at 1. Supervisor Pressey further argues that Plaintiffs have failed to establish a prima facie claim against him individually for retaliation, and that, as a result, these claims also must fail. <u>Id.</u> Specifically, Defendant Pressey argues that Plaintiffs failed to allege his knowledge of a protected activity, or any adverse employment action they suffered.

Plaintiffs object to Defendant Pressey's motion, and claim that he was personally involved in creating a hostile work environment. <u>See</u> Dkt. No. 39 at 4-7. Plaintiffs also argue that the Amended Complaint alleges a causal connection between Plaintiffs' complaints against Defendant Pressey and his alleged acts of intimidation and harassment. Plaintiffs also argue that

the law of the case doctrine bars his motion because the Court has previously denied a motion to dismiss the same allegations for failure to state a claim, and the only difference is that Plaintiffs have filed an Amended Complaint.  For the reasons set forth below, this Court finds that Plaintiffs have not established any claims against Defendant Pressey individually.  Accordingly, Defendant Pressey's motion to dismiss is granted and Plaintiffs' claims against him individually are hereby dismissed.

## BACKGROUND

The following facts are taken from Plaintiffs' Amended Complaint, and are not findings of fact by the Court, but rather, facts that are assumed to be true for the purposes of considering this motion.  The Court will consider "the facts as presented within the four corners of the complaint..." in the light most favorable to the plaintiffs, the non-moving party.  See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002).

Plaintiffs are both African-American women, who are, and at all times relevant, have been long-term employees of Defendant RIT. (Dkt. No. 34 at ¶¶ 13-14, 87-88).  RIT is a corporation organized under the laws of the State of New York.  Id. at ¶¶ 10-12. Defendants Denninger and Pressey are both Caucasian-American men, who are, and at all times relevant, have been high-ranking supervisors at RIT.  Plaintiffs Jones and Rankin began working as

dispatchers at RIT's Public Safety Department in February 2006 and November 2006, respectively. <u>Id.</u> at ¶¶ 14,88.

Shortly after Plaintiff Jones met her C-shift supervisor, Defendant Pressey, she claims he asked her, "did anyone show you where to take out the trash?" <u>Id.</u> at ¶ 16. Jones was offended by the comment and subsequently complained to Director Denninger, who followed up on the complaint and met with Jones and Supervisor Pressey to discuss the comment. <u>Id.</u> at ¶¶ 17-18.

In March 2006, Jones asked Director Denninger if she could work extra hours (overtime), and claims that he untruthfully responded, "no, it's not part of your contract" and referred her to two outside security agencies. <u>Id.</u> at ¶¶ 19-20. Plaintiff Rankin was also refused overtime hours at RIT. <u>Id.</u> at ¶ 90. Plaintiffs state that similarly situated Caucasian-American male co-workers were freely provided overtime at RIT. <u>Id.</u> at ¶¶ 23,90. Jones was denied overtime hours at RIT until September 21, 2011, when she filed a formal grievance about the issue with RIT's Human Resources ("HR") Department. <u>Id.</u> at ¶ 25.

Plaintiffs allege that coworkers often used vulgar and offensive language, including sexual innuendo and commentary, referring to women as "bitches," "sluts," and "whores," for example. <u>Id.</u> at ¶¶ 27, 30. Rankin was often greeted by male co-workers with the phrase, "hey bitch." <u>Id.</u> at ¶ 100. Co-workers

often refused to acknowledge Jones when she spoke to them during her shift.  Id. at ¶ 28.

Plaintiffs state that they could not freely enter and exit the dispatch room because they were not provided with ID badges until 2009, even though ID badges were given to all of their co-workers when they were hired.  Id. at ¶¶ 29, 117.  A co-worker would often lock Plaintiff Rankin out of the dispatch room and laugh at her as she attempted to re-enter.  Id. at ¶¶ 95-96.  Defendant Pressey was the supervisor of Plaintiff Rankin's shift and would open the door for her when she was locked out; however, he refused to address Rankin's complaints and defended her co-worker's actions.  Id. at ¶¶ 96-97.  There was a specific incident in March 2009, when Rankin left work early because her coworkers had denied her access to the dispatch room.  Id. at ¶¶ 101-105.

Around March 24, 2009, Plaintiff Rankin met with the co-worker who would lock her out of the dispatch room and Director Denninger. Id. at ¶ 111.  Director Denninger did not reprimand the co-worker and told them that they should not mention the meeting or incident to anyone else, threatening punishment if they did.  Id. at ¶¶ 109-114.  Shortly after, the co-worker who locked her out was promoted to a new position within the department.  Id. at ¶ 113.

Plaintiffs made multiple complaints about coworkers, including Supervisor Pressey, who often would watch inappropriate videos at the work site, including "videos of African-American men being

viciously beaten." Id. at ¶¶ 30-31, 92.  In August 2009, Plaintiff Jones informed Assistant Director Lezette ("Director Lezette") that offensive videos were being played on RIT's computers and she could no longer tolerate it.  Id. at ¶ 34.  No remedial action was taken, but on September 22, 2009, shortly after she complained, Director Denninger advised a supervisor to threaten Jones' job at RIT. Id. at ¶¶ 35-36.

Several alleged incidents specifically involved Defendant Pressey, who now moves to dismiss the claims against him.  In December 2009, Defendant Pressey allegedly ordered Jones to leave work for not answering a question to his satisfaction; when she did not comply, he moved within an inch of her face and loudly demanded that she leave.  Id. at ¶¶ 37-38.  She did not leave until the end of her scheduled shift.  Id.  Supervisor Pressey once stood over Plaintiff Rankin while she completed a form and raised his voice to reprimand her.  Id. at ¶ 107.

On October 13, 2010, requesting confidentiality, Jones informed Directors Denninger and Lezette that she was concerned about how a particular African-American was being treated in her department.  Id. at ¶¶ 41-43.  Director Lezette specifically named Plaintiff Jones when confronting her coworkers about their inappropriate behavior.   Id. at ¶ 44.   In October 2010, the Plaintiffs' shift was recognized at an RIT award ceremony; however, neither Jones nor Rankin was recognized or invited.  Id. at ¶¶ 47-

48, 120.  Director Denninger claimed that he "forgot" what shift they worked on.  Id. at ¶ 48.  On October 21, 2010, Plaintiffs complained to Lori Sykes ("Manager Sykes"), HR Compliance Manager of RIT about their working conditions, including an incident in which a coworker referred to an Asian student as a "slanty eyed gook." Id. at ¶ 49-50, 94.  One week later, all employees at RIT's Public Safety Department received an e-mail about a mandatory diversity awareness seminar.  Id. at ¶ 51.

On November 1, 2010, Jones followed up on her meeting with Manager Sykes, meeting with Director Denninger and asked him why her complaints had not been addressed.  Id. at ¶¶ 50-53.  He claimed to be "unaware" of previous complaints and assured her that the work environment would "[improve] immediately." Id. at ¶¶ 52-55.

On December 2, 2010, Jones met with Director Lezette and informed him that she was experiencing retaliation from co-workers as a result of her earlier complaints.  Id. at ¶ 57.  Shortly after, co-workers called Plaintiffs "rat[s]" and "mole[s]." Id. at ¶¶ 58, 119.

Several incidents in September 2011 indicate that the negative behavior persisted, causing Plaintiff Jones to file a formal grievance with RIT's HR Department on September 21, 2011.  Id. at ¶ 64.  At one point, Jones overheard male coworkers calling a suspected rape victim a "whore, slut, whore-bitch" and saying "she

wanted it, she's a bitch, she made it up." Id. at ¶¶ 60-61. On September 13, 2011, Jones witnessed a dispatcher watching video clips of African-American men being beaten to death in hate crimes, including images of confederate flags. Id. at ¶ 63. Another incident occurred in September 2011, when a coworker commented to Plaintiffs that President Obama "should be hung." Id. at ¶ 124. On September 22, two female officers allegedly exchanged sexually explicit comments. Id. at ¶ 69. Two days later, she heard a supervisor, Wayne Sutherland, make threatening comments to her co-workers and other co-workers made racially-charged comments about African-American students, including "they don't need to be here...get your pepper spray and tasers ready," at an African American fraternity event on campus. Id. at ¶¶ 70-72. Jones complained to HR in an e-mail dated September 26, 2011. Id. at ¶ 74.

Jones was supposed to have received her 5-year service certificate in January 2011, but did not. Id. at ¶ 65. She also alleges that Director Lezette issued two disciplinary written warnings to her that were based on false claims. Id. at ¶¶ 62, 66.

Plaintiff Jones filed two complaints with the New York State Division of Human Rights on October 5, 2011 and November 30, 2011, and continued to complain to RIT's HR Department during 2012. Id. at ¶¶ 75-76,78-80. In January 2012, a male co-worker made a sexually explicit gesture to Rankin during a meeting, and when she

complained, she was told that sweeping changes were underway to remedy the situation.  Id. at ¶¶ 126, 129.  In November 2012, Director Denninger requested a meeting with Jones to discuss a pay reduction that she alleges did not apply to her.  Id. at ¶ 82. Shortly after the meeting, Plaintiff Jones complained in an e-mail to Director Denninger and RIT's HR and in-house counsel.  Id. at ¶ 83.

In January 2013, Jones complained because the plaintiffs' names were not posted in their department's schedule for December 2012, January 2013 or February 2013, and they were also having unaddressed issues with vacation requests and exclusion from internet privileges.  Id. at ¶¶ 84-86.

Plaintiffs originally filed this action on April 18, 2012. See generally Dkt. No. 1.  The First Amended Complaint was filed on February 27, 2013.  See generally Dkt. No. 34.  Defendant Pressey responded by filing the instant motion to dismiss.

**DISCUSSION**

**I.   Standard of Review under Rule 12(b)(6)**

Although Plaintiffs argue that the law of the case doctrine bars this motion to dismiss because the Court has previously denied a motion to dismiss the same allegations for failure to state a claim, this argument is without merit.  The law of the case doctrine applies "when a court decides upon a rule of law." DiLaura v. Power Auth. Of the State of New York, 982 F.2d Cir.

1992).  However, here, the Court denied the original motion to dismiss as moot in light of the Amended Complaint, therefore, it is free to now address Defendant Pressey's motion as applied to the amended pleading.  See Dkt. No. 33, see also Davis v. Am. Corp., 2012 U.S. Dist. LEXIS 24841, at *10 (W.D.N.Y. Feb. 27, 2012).

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") provides for dismissal of the complaint where Plaintiffs have failed to state a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the Court must "construe Plaintiffs' complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in Plaintiffs' favor." Selevan v. New York Thruway Authority, 584 F.3d 82, 88 (2d Cir. 2009)(internal quotation marks omitted).  To withstand a motion to dismiss under Rule 12(b)(6), the complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." Harper v. New York City, Hous. Auth., 673 F. Supp.2d 174, 178 (S.D.N.Y. 2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The Court must "draw on its judicial experience and common sense" to determine whether a claim is plausible on its face. Wright v. Monroe Cmty. Hosp., 2011 U.S. Dist. LEXIS at *9-10, quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

Defendant is liable for the misconduct alleged." Id. For the reasons set forth below, I hereby grant Defendant Pressey's motion to dismiss Plaintiffs' claims against him individually.

## II. Plaintiffs have Failed to State a Claim of Hostile Work Environment

Plaintiffs have named Defendant Pressey for individual supervisory liability under Section 1981. (Dkt. No. 34 at 1, 21, 23, 29, 30). Of the seven causes of action, the first alleges that Defendant Pressey, a supervisor, created a hostile work environment, harassing Plaintiffs, motivated by their race, ancestry and/or ethnicity and gender under Section 1981. Id. at 21-22, 29. The fifth cause of action alleges state law claims of a hostile work environment under Human Rights Law. Id. at 29-30. Because claims under New York's Human Rights Law are governed by the same standards as those under federal Section 1981, this Court's analysis of Plaintiffs' hostile work environment claims will apply to both of these claims. See 42 U.S.C. § 1981; Executive Law § 290, et seq. See Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011)(stating that the standard for showing a hostile work environment is essentially the same under Section 1981 and the NYSHRL); see also Davis v. Oyster Bay-East, No. 03 Civ. 1372, 2006 U.S. Dist. LEXIS 82914, 2006 WL 657038, at *8, n.12 (E.D.N.Y. Mar. 9, 2006), aff'd, 220 Fed. App'x. 59 (2d Cir. 2007) ("discrimination claims under...42 U.S.C. [§] 1981... and NYHRL

§ 296 are analyzed together, as the same analytic framework applies to each").

Section 1981 prohibits discrimination on the basis of race with respect to "mak[ing] and enforc[ing] contracts," which the statute defines as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). One form of such discrimination is the imposition of a hostile work environment. A workplace is sufficiently hostile under Section 1981 if it is permeated with "discriminatory intimidation, ridicule, and insult that is...severe or pervasive [enough] to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., 510 U.S. 17, 21 (1993), quoting Los Angeles Dept. of Water and Power v. Manhart, 435 U.S. 702, 707 (1978).

To establish an employment discrimination claim under Section 1981 (and Human Rights Law) against Defendant Pressey, Plaintiffs must allege facts supporting the following elements: (1) Plaintiffs are members of a protected class (race, gender, or religion); (2) Defendant Pressey intended to discriminate on the basis of this protected class; and (3) discriminated concerning one of the statute's enumerated activities, such as making and enforcing contracts. See Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. N.Y. 2000).

Plaintiffs allege that Defendant Pressey subjected them to a hostile work environment on the basis of race and gender through allegedly unconscionable conduct which rose to the level of severe and pervasive.  I find that Plaintiffs have failed to sufficiently allege such a claim against him individually.  At no point in the Amended Complaint do Plaintiffs allege that Defendant Pressey harassed her in derogatory terms, either race or gender-specific, nor do they show that any of his decisions were specifically motivated by a racial animus.  See Wright, 2011 U.S. Dist. LEXIS at *15 (requiring Plaintiff to prove that Defendant employer had a discriminatory intent or discriminatory motive).

Instead, Plaintiffs allege that they were subjected to derogatory remarks and actions from their co-workers. Plaintiffs attempt to relate the conduct of their co-workers and Defendant Pressey's failure to reprimand them and "remedy [] racial hostilities" with his alleged discriminatory motive, however, their own recitation of the events does not support this finding.  Dkt. No. 34 at ¶ 134.  Furthermore, there are no alleged facts that adequately support Plaintiffs' contentions that Defendant Pressey altered the conditions of their employment.  For an individual liability claim under Section 1981 (and the New York State Human Rights Law), Plaintiffs must show not only that the supervisor participated in discriminatory conduct, but also that the supervisor is "one and the same with" the employer and "exercise[d]

control over the terms and conditions of the Plaintiff[s'] employment." <u>Rivera v. Rochester Genesee Reg'l Transp. Auth.</u>, U.S. Dist. LEXIS 32666, at *4 (W.D.N.Y. April 21, 2008); <u>Hicks v. IBM</u>, 44 F. Supp. 2d 593, 597 (S.D.N.Y. 1999).

Plaintiffs' non-conclusory allegations against Defendant Pressey describe several incidents in which he made comments, yelled at, or spoke down to Plaintiffs and joined with co-workers in watching "inappropriate videos." Dkt. No. 34 at ¶¶ 30-31. Plaintiff Jones alleges that Defendant Pressey asked her, "did anyone show you where to take out the trash?" <u>Id.</u> at ¶ 16. Supervisor Pressey would also reportedly open the door for Plaintiff Rankin when her co-worker would lock her out of the dispatch room; however, she alleges that he failed to reprimand her co-worker. <u>Id.</u> at ¶¶ 96-97.

In December 2009, Defendant Pressey allegedly ordered Jones to leave work for not answering a question to his satisfaction; when she did not comply, he moved within an inch of her face and loudly demanded that she leave. <u>Id.</u> at ¶¶ 37-38. She did not leave until the end of her scheduled shift. <u>Id.</u> Another time, he stood over Plaintiff Rankin while she completed a form and raised his voice to reprimand her. <u>Id.</u> at ¶ 107.

Plaintiffs also alleged that Supervisor Pressey would join co-workers "often" and "regularly" to watch inappropriate videos at

the work site, including "videos of African-American men being viciously beaten." Id. at ¶¶ 30-31, 92.

Defendant Pressey's conduct was not sufficiently hostile to state a claim for liability under Section 1981 and the New York State Human Rights Law. His comment to Plaintiff Jones about taking the trash out was neither severe, nor is it specifically alleged in the Amended Complaint to have been racially-motivated. The allegations of Supervisor Pressey "yelling" and "speaking down" to Plaintiffs, similarly, could not support a claim based on a sufficiently hostile or abusive work environment. See Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 372 (S.D.N.Y. 2005)(conduct including the defendant pointing finger in the plaintiff's face and "verbally abusing" the plaintiff was insufficient to establish a discrimination claim based on a hostile work environment). Furthermore, Supervisor Pressey's conduct did not alter the conditions of Plaintiffs' employment. Instead, after he allegedly yelled at Plaintiff Jones and ordered her to leave work, she was not deterred from staying until the end of her scheduled shift. Dkt. No. 34 at ¶¶ 37-38.

The allegations that Supervisor Pressey would often join Plaintiffs' coworkers in watching allegedly racially-charged videos, if accepted as true, depict "isolated acts or occasional episodes," which are insufficient to support a hostile work environment claim. Smalls, 369 F. Supp. 2d at 372. The test for

determining whether a work environment is "hostile" or "abusive" requires the Court to "look[] at all the circumstances...includ[ing] the frequency of [Defendant Pressey's] discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris</u>, 510 U.S. at 23 (1993).

In Plaintiffs' brief, they argue that Defendant Pressey's video watching was a "frequent and repetitive occurrence," and subjected them to a barrage of racially offensive imagery and sexually derogatory comments, none of which were alleged to have been made in Defendant Pressey's presence. <u>see</u> Plaintiffs' Memorandum of Law in opposition to the motion to dismiss at 2,6. However, the Amended Complaint fails to allege a specific time frame or frequency of the events beyond "often" or "regularly," and there are no facts that support the allegation that Defendant Pressey's joining in the viewing of the offensive videos was enough to be considered sufficiently "extreme" conduct. <u>See</u> <u>Piccone v. Town of Webster</u>, 2011 U.S. Dist. LEXIS 84574, at *47-50 (W.D.N.Y. Aug. 2, 2011), <u>aff'd</u> 2013 U.S. App. LEXIS 2607 (2d Cir. Feb. 7, 2013)(finding no actionable hostile work environment where supervisor asked female subordinate employees to view pornographic pictures and videos on his work computer). Supervisor Pressey's conduct in allowing and joining in the viewing of offensive videos

at work, combined with Plaintiffs' other allegations and the fact that he did not show the material to Plaintiffs or require them to view it, does not establish Plaintiffs' claim that he created a work environment permeated by "discriminatory intimidation, ridicule, and insult that is...severe or pervasive [enough] to alter the conditions of the victim's employment and create an abusive working environment." _Manhart_, 435 U.S. at 707. Furthermore, nowhere in the facts of the Amended Complaint did Plaintiffs allege that they complained directly to Supervisor Pressey about the videos or that he was aware that Plaintiffs had seen them watching the videos.

Plaintiffs' Amended Complaint recites the required elements of the claim without pleading the specific factual allegations against Defendant Pressey to support it against him individually. Although Rule 12(b)(6) does not require Plaintiffs' complaint to include detailed factual allegations, Plaintiffs have an "obligation to provide the grounds of [their] entitlement to relief [beyond] labels and conclusions, and a formulaic recitation of the elements of a cause of action." See _Wright_, 2011 U.S. Dist. LEXIS at *9-10, quoting _Twombly_, 550 U.S. at 555 (2007)(internal quotation marks omitted). Accordingly, since Plaintiffs have failed to sufficiently plead a hostile work environment claim against Pressey individually, their causes of action against him on this ground are hereby dismissed.

**III. Plaintiffs have Failed to Sufficiently State a   Claim for Retaliation**

Defendant Pressey is also named for individual supervisory liability under Section 1981 and the New York State Human Rights Law, for a claim of retaliation.  (Dkt. No. 34 at ¶1).  Again, because claims under New York's Human Rights Law are governed by the same standards as those under federal Section 1981, this Court's analysis of Plaintiffs' retaliation claims will apply to both of these claims.  See Bermudez v. City of New York, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011).

To establish a prima facie case of retaliation against Defendant Pressey, Plaintiffs must show: (1) they were engaged in a protected activity; (2) Supervisor Pressey was aware of that activity; (3) they suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse employment action. See Stewart v. City of New York, 2012 U.S. Dist. LEXIS 96998, at *28 (S.D.N.Y. July 10, 2012) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)).  I find that Plaintiffs have not established a prima facie case for retaliation against Defendant Pressey under Section 1981 or New York State's Human Rights Law. Accordingly, his motion to dismiss the claims against him is granted.

A "protected activity" is an "action taken to protest or oppose statutorily prohibited discrimination." Stewart, 2012 U.S.

Dist. LEXIS 96998, at *29 (S.D.N.Y. July 10, 2012), quoting <u>Cruz v. Coach Stores</u>, 202 F.3d 560, 566 (2d Cir. 2000). When Plaintiffs complained to Directors Lezette and Denninger, HR Manager Sykes, RIT's in-house legal counsel and Finance Department regarding their co-workers' behavior that offended them on the basis of their identities as African-American women, they engaged in a protected activity. However, based on the facts alleged in the Amended Complaint, Supervisor Pressey was not aware of complaints regarding statutorily discriminatory behavior. Rather, he was only aware of the complaints in connection to the incident when he commented about Jones taking out the trash and the incident when he unlocked the door to the dispatch room for Rankin, neither of which involved claims of discrimination. <u>See</u> <u>Callahan v. Con. Edison Co.</u>, 187 F. Supp. 2d 132, 138 (S.D.N.Y. 2002)(Section 1981 retaliation claim dismissed where the plaintiff failed to allege that the individual defendant "had any actual or constructive knowledge of her complaints to...management.").

Further, even if Plaintiffs had alleged that Defendant Pressey was aware of their participation in a protected activity, they would still fail to establish a prima facie case of retaliation against him, because they failed to allege that they suffered an adverse employment action in relation to his conduct. In order to be an adverse employment action, it must be "materially adverse," meaning that Defendant Pressey's action(s) would be capable of dissuading a reasonable worker from making or supporting a charge

-19-

of discrimination could constitute retaliation.  See <u>Wright</u>, 2011
U.S. Dist. LEXIS 82809, at *19 (W.D.N.Y. July 28, 2011)(requiring
Plaintiff to prove that Defendant employer had a discriminatory
intent or discriminatory motive)(citing <u>Burlington Northern & Santa
Fe Railway Co. v. White</u>, 548 U.S. 53, 57, 126 S. Ct. 2405, 165 L.
Ed. 2d 345 (2006)).

Plaintiff Rankin attempted to show that she met this standard
by alleging that Defendant Pressey retaliated against her by
failing to address a conflict she had with the coworker who locked
her out of the dispatch room.  (Dkt. No. 34 at ¶¶ 96-97).
However, Supervisor Pressey's action (or inaction) would not
dissuade a reasonable worker from making or supporting a charge of
discrimination, nor did it.  For over two years after the incident,
Plaintiffs continued to make complaints of discrimination to
various upper-level administrators.

Plaintiffs cite allegedly unwarranted discipline or other
forms of scrutiny from Defendant Pressey as acts of retaliation;
however, employee investigations, unwanted scrutiny from
supervisors, and negative performance evaluations without attendant
negative results or deprivation of position/opportunity, do not
sufficiently constitute adverse employment actions under Section
1981 or New York's Human Rights Law.  See <u>Wright</u>, 2011 U.S. Dist.
LEXIS at *22.

As such, I find that Plaintiffs fail to sufficiently plead a claim for retaliation against Defendant Pressey individually. Accordingly, Plaintiffs' retaliation claims against him are hereby dismissed.

**CONCLUSION**

For the reasons stated above, Defendant Pressey's motion to dismiss is granted, and Plaintiffs' claims against him individually are dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/ Michael A. Telesca**

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: July 30, 2013
       Rochester, New York