UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GINGER L. JONES and ESSIE RANKIN,

Plaintiffs,

v.                                                                          JURY TRIAL DEMANDED

                                                                            SECOND AMENDED
                                                                            COMPLAINT

                                                                            Civil Action No. 6:12-cv-6210

ROCHESTER INSTITUTE OF TECHNOLOGY
and CHRIS DENNINGER,

Defendants.

_____

## INTRODUCTION

1.  This is an action brought by the Plaintiffs GINGER JONES ("Ms. Jones")
    and ESSIE RANKIN ("Ms. Rankin"), (collectively, "Plaintiffs") for the
    creation of an unabated hostile environment and discrimination by the
    Defendant ROCHESTER INSTITUTE OF TECHNOLOGY ("RIT" and/or
    "Defendant") and DIRECTOR CHRIS DENNINGER ("Director Denninger")
    based on race and gender in violation of the Civil Rights Act of 1991, 42
    U.S.C. § 1981 ("Section 1981"); the Civil Rights Act of 1964, 42 U.S.C.
    §2000e, et. seq., ("Title VII"); and the New York State Human Rights Law,
    Executive Law § 290, et seq., ("NYSHRL"), and for retaliation under those
    statutes as well.

## JURISDICTION AND VENUE

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331and
    1343, 42 U.S.C. § 2000 (e), and 42 U.S.C. §1981. The Court has pendent

1

jurisdiction with regard to Plaintiff's state law claims.

3. Venue is proper pursuant to 28 U.S.C. §1391.

### Administrative Exhaustion for Jones

4. Jones filed two (2) complaints with the New York State Division Of Human Rights; the first on October 5, 2011, alleging discrimination on the basis of gender and race. The second complaint was filed on November 30, 2011, alleging retaliation for having filed the previous charge, and for a continuing, unabated hostile work environment.

5. The EEOC issued notices of right to sue on both charges on January 9, 2012 pursuant to their work share agreement.

### Administrative Exhaustion for Rankin

6. Rankin filed a complaint with the New York State Division Of Human Rights on October 7, 2011 alleging discrimination based on gender and race.

7. The EEOC issued a notice of right to sue on January 9, 2012.

### PARTIES

8. Jones is an individual African-American woman who was at all times relevant herein an employee of RIT.

9. Rankin is an individual African-American woman who was at all times relevant herein an employee of RIT.

10. Defendant RIT is a corporation organized under the laws of the State of New York.

11. Chris Denninger is a high-ranking supervisor of RIT holding the position of

Director "Director Denninger".   Director Denninger is a Caucasian-American man.

## FACTUAL ALLEGATIONS FOR JONES

12. Ms. Jones is an African American female.

13. Ms. Jones has been employed by RIT as a dispatch officer with the Public Safety Department since February 2006.

**Background Evidence of Prior Complaints of Discrimination by Jones**

14. In her first week of work, Ms. Jones was introduced to Supervisor Pressey, who  supervised her on the C-shift at RIT.

15. Shortly after meeting Ms. Jones, Supervisor Pressey commented to her "did anyone show you where to take out the trash?"

16. Ms. Jones was offended by Supervisor Pressey's comment and complained to Director Denninger.

17. Director Denninger met with Jones and Supervisor Pressey to discuss the comment, but no remedial action was ever taken.

18. In March 2006, shortly after being hired, Jones asked Director Denninger if she could work extra hours (overtime), which was a common practice.

19. Director Denninger responded "no, it's not part of your contract" but this is untrue.   Director Denninger offered to refer Ms. Jones to two (2) other security agencies rather than offer her more hours at RIT.   At that time, Ms. Jones was not allowed to work more than 32 hours.

20. Similarly situated Caucasian coworkers were not referred to outside agencies, were permitted to pick up extra hours at RIT and work overtime

hours at their preference.

21. Ms. Jones and Ms. Rankin were the only two (2) employees who were referred elsewhere instead of being given overtime opportunities at RIT.

22. Ms. Jones was denied overtime hours because of her gender and race while similarly situated Caucasian-American male co-workers were freely given overtime.

23. Director Denninger's refusal to allow Ms. Jones to work overtime hours was also in retaliation for the complaint she filed against Supervisor Pressey for his inappropriate comment to her when they first met. Supervisor Pressey would then engage in a pattern of discriminatory conduct and retaliation against Ms. Jones, thereafter.

**Current Allegations Which Form the Gravamen of Jones' Complaint**

24. Ms. Jones would continue to be denied overtime hours from the date of her hiring in 2006 until she filed a formal grievance with the RIT Human Resources Department concerning the matter on September 21, 2011.

25. During her tenure at RIT, Ms. Jones has also been subject to a hostile work environment due to her race and gender.

26. Ms. Jones' coworkers often used vulgar and offensive language, frequently including inappropriate sexual innuendo and commentary.

27. Co-workers often refused to acknowledge Ms. Jones when she would speak to them in the course of her shift.

28. Additionally, until 2009, Ms. Jones was denied access to freely enter and exit the dispatch room because she was not provided an ID badge. This

same ID badge was given to all her co-workers when they commenced their employment.

29. Ms. Jones also made many complaints, specifically about co-workers watching inappropriate videos at the work site, including videos of African-American men being viciously beaten, co-workers using offensive language and making inappropriate comments regarding race and gender, such as referring to women as "bitches," "sluts," and "whores."

30. Supervisor Pressey would often join dispatchers such as John Connelly ("Mr. Connelly") and Daniel Woods ("Mr. Woods") in  watching the above-mentioned inappropriate videos.

31. Supervisor Pressey's involvement in, encouragement of and failure to curtail these offensive videos being played at the workplace created a hostile work environment on the basis of Ms. Jones' race and gender.

32. The actions of Supervisor Pressey were severe and pervasive, altering the terms and conditions of Ms. Jones' employment and interfering with her right to contract for employment free of a workplace permeated by racial and gender based hostilities.

33. Supervisor Pressey was directly and personally involved in the creation of a hostile work environment through his frequent involvement in these offensive videos.

34. In August 2009, Ms. Jones informed Asst. Director Lezette ("Director Lezette") that she could no longer tolerate the offensive videos being played on RIT's computers and asked that remedial action be taken.

35. In spite of Ms. Jones' complaints, no remedial action was ever taken on her behalf.

36. Upon information and belief, on September 22, 2009, shortly after Ms. Jones complained to Director Lezette about the offensive environment at RIT, Director Denninger advised a supervisor to threaten Jones' job at RIT.

37. In or about December 2009, Supervisor Pressey ordered Jones to leave work for allegedly not answering a question to his satisfaction.

38. When Jones did not leave immediately, Supervisor Pressey abruptly came over to Plaintiff's chair, moved within an inch of her face and loudly demanded that she leave the office, which she did at the end of her scheduled shift.

39. On December 24, 2009, Jones complained to Director Lezette about Supervisor Pressey's threatening and retaliatory behavior.

40. Throughout 2010, Jones continued to be subjected to the same type of continuing discrimination and hostile work environment based on race and gender as she had been tolerating since 2006.

41. On October 13, 2010, Jones spoke to Director Denninger and Director Lezette about her concerns over how a particular African-American employee was being treated in the Public Safety Department.

42. Jones also complained about what she felt was a hostile work environment based on her co-workers continuing to make racially and sexually inappropriate remarks in her presence.

43. When making the complaint, Ms. Jones specifically requested confidentiality because she feared retaliation from co-workers if they knew about her complaints to Director Denninger and Director Lezette.

44. In spite of Ms. Jones' request, Director Lezette specifically named Ms. Jones when confronting coworkers about their inappropriate behavior, causing them to treat Ms. Jones with increased hostility.

45. No remedial action was actually taken by Director Lezette or Director Denninger against any employees and the harassment persisted.

46. In or about October 2010, Ms. Jones' shift was recognized at an award ceremony within RIT. An email was sent to all members who worked on that shift inviting them to the ceremony, with the exception of Ms. Jones and Ms. Rankin.

47. Ms. Jones (as well as Ms. Rankin) were the only two (2) staff members on that shift that were not recognized, nor invited to the ceremony.

48. When Ms. Jones asked why she and Ms. Rankin were excluded from the awards, Director Denninger claimed he "forgot" what shift Jones and Rankin worked on.

49. On October 21, 2010, Ms. Jones and Ms. Rankin met with Human Resource Compliance Manager of RIT, Lori Sykes ("Ms. Sykes") to address complaints over their working conditions including their exclusion from staff recognition awards, hostile work environment based on race and gender, unfair overtime distribution and negative performance appraisals they have been receiving in retaliation of filing complaints.

50. At the same meeting, Ms. Jones and Ms. Rankin informed Ms. Sykes of an incident wherein Officer Woods referred to an Asian student as a "slanty eyed gook."

51. On October 28, 2010, all workers at RIT Public Safety received an email indicating that workers would be mandated to attend a diversity awareness seminar, all to no avail because the hostile environment persisted, unabated.

52. On November 1, 2010, Ms. Jones met with Director Denninger as a follow up to her meeting with Ms. Sykes.

53. During that meeting, Ms. Jones asked why her previous complaints had not been addressed.

54. Director Denninger falsely answered that he was "unaware" of previous complaints from Ms. Jones.

55. Director Denninger also stated that he would make sure the work environment "improved immediately."

56. In spite of Director Denninger's promise, Ms. Jones continued to experience a hostile work environment, including racially and sexually offensive language.

57. On December 2, 2010, Ms. Jones again met with Director Lezette to inform him that she was experiencing retaliation from co-workers as a result of her earlier complaints (that were disclosed without her consent) about her work environment.

58. On December 5, 2010, Ms. Jones complained to Ms. Sykes about the

harassment she was receiving from co-workers, including referring to her as a "rat" and a "mole."

59. Ms. Jones received only a vague follow-up email from Ms. Sykes regarding their meeting and again, no remedial action was taken, and again, the hostile environment persisted.

60. In or about September 2011, Ms. Jones heard male co-workers referring to a suspected rape victim as a "whore, slut, whore-bitch."

61. Ms. Jones also heard male coworkers commenting "she wanted it, she's a bitch, she made it up."

62. On September 7, 2011, Ms. Jones received a disciplinary write up from Director Lezette for allegedly being rude to a caller, which was untrue.

63. On September 13, 2011, Ms. Jones witnessed a dispatcher viewing video clips showing African-American men being beaten to death in hate crimes. The video included confederate flags and violent, racially charged imagery that offended Ms. Jones.

64. On September 21, 2011, Ms. Jones filed a formal grievance with the RIT Human Resource Department regarding the hostile work environment, and retaliation she was experiencing for her many complaints to human resources and management regarding the sexually and racially charged environment she had endured.

65. With the formal grievance, Ms. Jones also made note of the fact that she had not received her 5-year service certificate, which was earned on or about January 30, 2011. She also met with and discussed these issues

with Tammy Gouger ("Ms. Gouger"), a representative in the HR department.

66. Shortly thereafter, Director Lezette falsely claimed that Ms. Jones had been rude to a caller during her shift and gave her a written warning. Similarly situated Caucasian-American dispatchers who received complaints from callers of similar or more serious were not written up or subject to any discipline whatsoever.

67. The reason given by Director Lezette for disciplining Jones was pre-textual.

68. Jones was treated differently in retaliation for complaining repeatedly about the hostile work environment fostered by Defendants.

69. On September 22, 2011, while Ms. Jones was present, Officer Kimberly Rose ("Officer Rose") shouted "fuck that, my mother-fucking pussy is worth more than twenty (20) dollars." Officer Margaret Goodwin ("Officer Goodwin") responded "I know damn well my shit is worth more than twenty (20) dollars."

70. On September 23, 2011, Ms. Jones heard Supervisor Wayne Sutherland ("Supervisor Sutherland") making threatening comments to her co-workers, saying "you are fucked if you are on B- shift, anyone on my shift is in hell or jail."

71. On September 24, 2011, Ms. Jones was working at an African American fraternity event on campus.

72. During the event, Ms. Jones heard co-workers Matthew Playfair ("Mr.

Playfair") and Chris Lopiano ("Mr. Lopiano") making racially charged comments, saying, in reference to the African-American students, "they don't need to be here, they need to just leave, why in the hell have them back here when they don't know how to act? Get your pepper spray and tasers ready."

73. Supervisor Southerland and David J. Robinson ("Supervisor Robinson") were both present for and heard the inappropriate comments and said nothing to stop and/or remedy the behavior.

74. On September 26, 2011, Ms. Jones emailed Deb Spencer of Human Resources ("Ms. Spencer") to complain about the racially charged work environment, and to specifically complain about the vulgar and offensive language of her co-workers.

75. On October 5, 2011, Ms. Jones filed a complaint with the New York State Division of Human Rights.

76. On November 30, 2011, Ms. Jones filed a second complaint with the Division of Human Rights.

77. On December 19, 2011, at a social event, Director Denninger and other co-workers intentionally seated themselves next to Ms. Jones in an attempt to intimidate  and dissuade her from making further complaints about the workplace.

78. On or about February 1, 2012, Ms. Jones again formally complained to Ms. Spencer for failure to receive her 5-year performance certificate.  A similarly situated Caucasian-American employee named John LeBlanc

("Mr. LeBlanc") was given his 5-year service certificate after 2 years of service. His picture was taken and he was added to the department bulletin board. Despite completing her 5-year of service on or about January 20, 2011, Ms. Jones did not receive her certificate until February 15, 2012.

79. On or about March 30, 2012, Ms. Jones again complained to Ms. Spencer of the hostile work environment, commenting on profanity used in a training session conducted by Dave Edborg ("Mr. Edborg"), the unauthorized access and use of the dispatch room by co-workers as well as a dispatchers mishandling parent requests.

80. On or about April 9, 2012, Ms. Jones again submitted a complaint to Ms. Spencer regarding offensive and obscene language used by Supervisors Southerland and Nathaniel Sullivan ("Supervisor Sullivan") including but not limited to masturbation, disclosing personal information and making inferences about rape victims.

81. Three days later, when the obscene behavior of Supervisor Sullivan continued, Ms. Jones made another complaint to Ms. Spencer stating that his conduct had not been abated.

82. On or about November 14, 2012, Director Denninger requested a meeting with Ms. Jones during which time he alleged that she would be subject to a pay reduction that clearly did not apply to Ms. Jones. This again was an effort to harass Ms. Jones.

83. On or about November 16, 2012, Ms. Jones sent Director Denninger, Ms.

Spencer and Bobby Colon, in-house counsel for Defendant RIT ("Mr. Colon") an email regarding the meeting about the pay decrease, the continued hostile work environment, denial of access to the internet, certain programs and work related applications, and faulty equipment that she believed was intended to harass her. She followed up on this email on or about November 19, 2012 but included John Zink ("Mr. Zink") in the Finance department.

84. On or about November 29, 2012, Ms. Jones learned that Ms. Rankin and herself were not posted on any Public Safety Department schedule for the months of December 2012, January 2013 or February 2013. For years, Ms. Jones (and Ms. Rankin) followed the schedules as posted and were always included in the scheduling. Ms. Jones then sent an email to Spencer, Colon, HR Manager, Cliff Eddington ("Mr. Eddington") regarding the schedule, and also included issues she was facing regarding vacation day requests that continued to be ignored. Upon information and belief, Ms. Jones (and Ms. Rankin) were purposely removed from the schedule after a medication session in this very matter was held on December 3, 2012.

85. On or about December 30, 2012, Ms. Jones send a third request for vacation day scheduling to Mr. Edborg and stated that her requests from December 19, 2012 and December 26, 2012 had been ignored by Supervisor Sullivan. In response to her request, Supervisor Sullivan stormed into the dispatch room, slammed the door and told her that her

vacation had been approved.

86. On or about January 20, 2013, Jones again sent an email to Ms. Spencer, Mr. Colon, and Mr. Zink requesting that they address the fact that she is being excluded from internet privileges and her concerns about having vacation requests handled appropriately and in a timely fashion.

87. The discrimination, hostile work environment, harassment and retaliation continued including negative performance appraisals and other disparate treatment.

88. On August 18, 2015, Ms. Jones was wrongfully terminated from Defendant RIT along with co-Plaintiff, Ms. Rankin. Upon information and belief, no other employees were discharged.

89. Upon information and belief, Defendant RIT's claims that this termination was a result of a reduction in force are pretextual and retaliatory in nature as evidenced by the fact that Plaintiffs were the only employees discharged despite being long-term employees. Caucasian-American officers have taken Plaintiffs' hours, receiving a higher pay rate (overtime pay) than Plaintiffs, among other factors. Employees that are being given the benefits of Plaintiffs' hours are not minority and not in an active litigation against Defendant RIT making credible that this termination was a targeted effort.

**FACTUAL ALLEGATIONS FOR RANKIN**

90. Ms. Rankin is an African-American female.

91. Ms. Rankin has worked for RIT as a "Public Safety Dispatcher" since

November 1, 2006.

92. As early as 2007, Ms. Rankin was subjected to racially insensitive comments; demeaning discussions about African-Americans, women and homosexuals; vulgar language; sexually explicit language; and witnessed co-workers and supervisors enjoying racially charged videos.

93. Ms. Rankin was also refused overtime hours when requested and Director Denninger instead referred her to McCabe & Associates for an outside job opportunity. These hours were freely provided to her Caucasian-American co-workers.

94. Supervisor Pressey would regularly come into the dispatch room and watch offensive videos that used the word "nigger", profanity, and other demeaning portrayals of African Americans.

95. Supervisor Pressey's involvement in, encouragement of and failure to curtail these offensive videos being played at the workplace created a hostile work environment on the basis of Ms. Jones' race and gender. The actions of Supervisor Pressey were severe and pervasive, altering the terms and conditions of Ms. Jones' employment and interfering with her right to contract for employment free of a workplace permeated by racial and gender based hostilities.

96. Supervisor Pressey was directly and personally involved in the creation of a hostile work environment through the use of these offensive videos.

97. In response to Supervisory Pressey playing these videos in the dispatch room, Ms. Rankin reported his conduct to Ms. Sykes, to no avail.

98. From the beginning of her tenure, Rankin was routinely denied access to the dispatch room by her Mr. Connelly during her shift, and Mr. Connelly would laugh at her as she tried to get in the room.

99. This became a common practice for Mr. Connelly, so much so that Ms. Rankin would try to avoid leaving the dispatch room if at all possible in order to prevent herself from being locked out by Mr. Connelly when she attempted to re-enter the dispatch room.

100. Since Supervisor Pressey is the supervisor for the 3rd shift that Ms. Rankin worked on, she addressed her issues with Mr. Connelly with him. Supervisor Pressey defended Mr. Connelly and stated that Mr. Connelly was too busy to open the door, without having any actual knowledge of this. In fact, Supervisor Pressey would be called upon to open the door for Ms. Rankin when she was locked out and would witness that Mr. Connelly was not too busy to open the door. In retaliation of having filed a complaint against Supervisor Pressey, he refused to properly address Ms. Rankin's issue.

101. Throughout her time at RIT, Ms. Rankin has been subject to a hostile work environment based on race and gender that has gone unremedied, despite many complaints to management.

102. Rankin's co-workers and supervisors have created a hostile work environment through the use of racially insensitive language, homophobic language, sexually explicit conversations and the viewing of racially inappropriate videos depicting extreme violence against African-American

men by citizens as well as police brutality against African Americans men.

103.     As an example of the hostile environment of Defendant RIT, Ms. Rankin was often greeted by male officers with the phrase "hey bitch."

104.     On March 23, 2009, Ms. Rankin returned from her break and attempted to re-enter the dispatch room, which requires a badge to be swiped or a person inside the room to open the door.

105.     Mr. Connelly refused to open the door for her, sitting and smirking at her as she stood and pleaded with him to open the door.

106.      Rankin and Jones were the only dispatchers who did not have an ID badge that could access the dispatch room.

107.      Upon information and belief, Rankin and Jones were not given ID badges due to their race and gender while other Caucasian-American coworkers were given their ID badges when commencing employment.

108.     Because she had been denied access to the dispatch room before by coworkers, Ms. Rankin became upset and left work early that day.

109.     Supervisor Pressey constantly harassed and abused his power in relation to Ms. Rankin.  Despite her following the procedures as she was trained to do, he made a point to single her out in acts of discrimination and retaliation.

110.     On one occasion, Supervisor Pressey targeted Ms. Rankin, standing over her while she completed a form and raising his voice to reprimand her.  When Ms. Rankin pointed out that she was not only following protocol but that Caucasian American co-workers always

completed the forms insufficiently, Mr. Connelly attempted to further intimidate her.

111.    Supervisor Pressey's failure to abate the hostile work environment created on the basis of race and gender and even taking part in the actions, further discrimination and harassment of Ms. Rankin were in violation of RIT policies and procedures in addition to applicable state and federal laws.

112.    On or about March 24, 2009, Director Lezette contacted Ms. Rankin and indicated he would like to meet with her to discuss the incident with Mr. Connelly.

113.    At that meeting, Ms. Rankin addressed Mr. Connelly's refusal to let her in the dispatch room as well as the viewing inappropriate videos in the presence of Ms. Rankin and the misuse of security cameras to look at attractive women.

114.    Through the course of the meeting, Director Denninger attempted to downplay the offensiveness of Mr. Connelly's behavior.

115.    No disciplinary action or warnings were given to Mr. Connelly concerning his behavior.

116.    Shortly thereafter, in addition to not being subject to discipline or reprimand, Mr. Connelly was promoted to a new position within the department.

117.    At the conclusion of the meeting, Director Denninger told both Mr. Connelly and Ms. Rankin that neither was to mention the meeting or the

incidents discussed to anyone and threatened punishment if they did. This was clearly done in an effort to dissuade Ms. Rankin from taking such actions in the future.

118.    As Ms. Rankin left the meeting, Director Denninger again emphasized to Ms. Rankin that if she had further problems, she was to report them directly to him and no other supervisor.

119.    In the following months, Ms. Rankin received several emails from Director Lezette "checking up" on her, but was scared to mention any further incidents to him because of Director Denninger's warning to only communicate with him regarding incidents at work.

120.    On May 5, 2009, Ms. Rankin finally received notice that her ID badge would be programmed into the computers in order to allow her access to the dispatch room.

121.    This was the first time she was able to access the dispatch room since being hired in November of 2006.

122.    Although finally receiving access to the dispatch room, her co-workers and supervisors continued to call her a "rat" and "mole" in retaliation for complaints she had made about the discrimination and hostile work environment.

123.    On or about October 6, 2010, Ms. Rankin was excluded from a staff recognition award and celebration given in honor of the 3rd shift of the Public Safety shift.  She was clearly a member of the 3rd shift.

124.    On or about October 28, 2010, Ms. Rankin made a formal

complaint to Ms. Sykes regarding the hostile work environment and disparate treatment she was facing at the workplace.

125.    On or about October 28, 2010, Ms. Rankin met with Director Denninger in his office as a follow up meeting regarding her complaint to HR the day before.

126.    The hostile work environment and disparate treatment continued.

127.    In or about September 2011, a coworker commented to Ms. Rankin (and Ms. Jones) that President Obama "should be hung."

128.    The only remedial action taken was counseling the co-worker that "discussion of one's political views should be limited."

129.    On January 17, 2012, Officer Pacioni made a gesture to Ms. .Rankin where he cupped his hand and pretended to masturbate during a meeting in the communications office.

130.    Ms. Rankin complained via email about Officer Pacioni's behavior to Ms. Spencer, Director Lezette, Mr. Zink and Mr. Colon detailing the sexually inappropriate incident.

131.    The only remedial action taken was to have the Safety Department attend a seminar about sensitivity, yet the harassment persisted.

132.    On or about January 25, 2012, Ms. Rankin met with Judy Bender ("Ms. Bender") to discuss her treatment in the Public Safety Department. She made known her complaints and was told that sweeping changes were in the works to remedy the situation.  None of these changes ever surfaced.

133.     That same day, Ms. Rankin met with Mr. Zink and Ms. Gougher regarding the hostile work environment and disparate treatment.  She was also told that this level of behavior would not be tolerated and she should expect to see changes.  She never did see any changes. It was agreed that Mr. Zink would be kept informed of on going issues since the chain of command had failed.

134.     The discrimination, hostile work environment, harassment and retaliation continued including negative performance appraisals and other disparate treatment.

135.     On August 18, 2015, Ms. Rankin was wrongfully terminated from Defendant RIT along with co-Plaintiff, Ms. Jones.  Upon information and belief, no other employee was discharged.

136.     Upon information and belief, Defendant RIT's claims that this termination was a result of a reduction in force are pretextual and retaliatory in nature as evidenced by the fact that Plaintiffs were the only employees discharged despite being long-term employees and Caucasian American officers have taken Plaintiffs' hours, receiving a higher pay rate (overtime pay) than Plaintiffs, among other factors.  Employees that are being given the benefits of Plaintiffs' hours are not minority and not in an active litigation against Defendant RIT making credible that this termination was a targeted effort.

**Causes of Action for Plaintiff Jones**

**FIRST CAUSE OF ACTION**
**HOSTILE WORK ENVIRONMENT AS PER 42 U.S.C. § 1981**

137.     Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

138.     Plaintiff claims she was subject to discrimination, harassment and a hostile work environment by several co-workers and supervisors, motivated by her race and gender under 42. U.S.C. §1981, as set forth in the above-stated paragraphs.

139.     The conduct alleged by Plaintiff was so severe and pervasive that a reasonable person in Plaintiff's position would find her work environment to be hostile and abusive as a result of Defendants' failure to remedy the racial hostilities that Plaintiff complained to administrators and human resources personnel about on many occasions.

140.     Defendants, at all times relevant herein, had actual and constructive knowledge of the conduct described in the above-stated paragraphs by the actions of both Director Denninger and Supervisor Pressey, but failed to take any remedial action to put an end to the treatment that Plaintiff endured.

141.     The above-described conduct of Plaintiff's co-workers and by Director Denninger and Supervisor Pressey created an intimidating, oppressive, hostile and offensive work environment which interfered with the Plaintiff's well being.

142.	As a result of the hostile and offensive work environment perpetrated and maintained by Defendants including Director Denninger and Supervisor Pressey, and their failure to protect the Plaintiff from further harassment, Plaintiff suffers severe emotional distress.

143.	Defendants violated 42 U.S.C. § 1981 by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of the Defendants as described above.

144.	Defendants failed to comply with their duty to take all reasonable and necessary steps to eliminate racial, ancestral, and/or ethnic harassment from the workplace and to prevent it form occurring in the future.

145.	As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering and extreme and severe emotional anguish and emotional distress; she has incurred and will continue to incur medical expenses for treatment by health care professionals, and for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages.

146.	As a further and proximate result of Defendant's violations, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendant, and has thereby incurred and will continue to incur, legal fees

and costs, the full nature of which are presently unknown to the Plaintiff. Plaintiff requests that attorney fees be awarded.

## SECOND CAUSE OF ACTION
## RETALIATION AS PER 42 U.S.C. § 1981

147.     Plaintiff repeats and re-alleges by reference each and every allegation contained in paragraphs stated above and incorporates the same as though fully set forth herein.

148.     In or about March 2006, shortly after being hired, Plaintiff made a complaint to Director Denninger about the hostile working environment cultivated by Defendant. She made a similar complaint in August 2009 to Director Lezette as well. Shortly thereafter Plaintiff was verbally reprimanded for pre-textual reasons and also harassed in retaliation for her complaints of a hostile work environment based on race and gender. The harassment caused by Director Denninger and Supervisor Pressey was continuous, and severe.

149.     Plaintiff also made several informal and formal complaints to Defendant RIT and their agents from 2009 to the present.

150.     By formally protesting the conditions of her work place on the basis of race and gender with management and by filing a complaint of discrimination, Plaintiff engaged in protected activity under 42 U.S.C. § 1981.

151.     Thereafter, Plaintiff was  continually harassed by other employees, as well as subjected to an increasingly hostile work environment. Plaintiff was harassed in retaliation for her several complaints to management

about the ongoing hostile work environment of Defendant based on race and gender. These were efforts to dissuaded her from making further complaints of discrimination in the workplace. Plaintiff was terminated in a final act of retaliation.

152.     There was a causal connection between Plaintiff's engagement in protected activity and the retaliatory treatment she suffered.

153.     Defendants engaged in a pattern of illegal retaliation because the Plaintiff had complained of race and gender discrimination.

154.     Defendant had no legitimate business reason for these actions.

155.     As a direct and proximate result of Defendants' willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering and extreme and severe mental anguish and emotional anguish and emotional distress; and for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

156.     As a further and proximate result of Defendants' violations of 42 U.S.C. § 1981, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants and each of them, and has thereby incurred and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff. Plaintiff requests that

attorney fees be awarded.

157.    Defendants' conduct as described herein was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights. The acts were performed with the knowledge of Defendants' economic power over Plaintiff. Defendant ratified the unlawful conduct of its employees in this action. Consequently, Plaintiff is entitled to punitive or exemplary damages from all Defendants.

**THIRD CAUSE OF ACTION:**
**GENDER DISCRIMINATION UNDER TITLE VI**

158.    Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

159.    Defendants, through its agent, engaged in a continuing pattern of unremedied gender discrimination by subjecting Plaintiff to unwelcome sexual harassment through the creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended.

160.    Defendant at all times relevant herein had actual and constructive knowledge of the conduct described herein.

161.    The above described unwelcome sexual harassment created an intimidating, oppressive work environment which interfered with the Plaintiff's well being.

162.    As a result of the hostile and offensive work environment, perpetrated and maintained by Defendants and their failure to protect the Plaintiff from further harassment, the Plaintiff suffers from severe

emotional distress.

163.    Defendants violated Title VII of the Civil Rights Act of 1964, as amended, by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts and failures to act of the defendants as described above.

164.    Defendant failed to comply with their duty to take all reasonable and necessary steps to eliminate sexual harassment from the workplace and to prevent it from occurring in the future.

165.    As a direct and proximate result of the Defendant's willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering and extreme and severe mental anguish and emotional anguish and emotional distress; she has incurred and will continue to incur medical expenses for treatment by health care professionals, and for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

166.    As a further and proximate result of Defendant's violations of Title VII as amended, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants and each of them, and has thereby incurred and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff. Plaintiff further requests

that attorney fees be awarded.

167.      Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of Defendants described above was done with fraud, oppression and malice, with a conscious disregard for her rights, and with the intent, design, and purpose of injuring her. Plaintiff is further informed and believes that Defendants authorized, condoned and/or ratified the unlawful conduct alleged herein, specifically. By reason thereof, Plaintiff is entitled to exemplary damages from all Defendants in a sum to be adduced at trial.

**FOURTH CAUSE OF ACTION:**
**RETALIATION UNDER TITLE VII**

168.      Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

169.      Plaintiff, in good faith, complained to both management and the NYSDHR/EEOC of racial and sexual discrimination in the workplace, and on a routine basis, informally to management.

170.      By protesting the conditions of her work place with management for several years, and by filing her charge of discrimination Plaintiff engaged in protected activity under Title VII.

171.      Plaintiff was subject to retaliation as a result in the form of denials of overtime hours; obscene comments directed toward her; threats of termination; verbal abuse by co-workers and management; and termination.

172.    There was a causal connection between Plaintiff's engagement in protected activity and the retaliatory treatment she suffered.

173.    Defendants engaged in a pattern of illegal retaliation because Plaintiff had complained of the racially motivated hostile work environment and discrimination, both formally and informally.

174.    Defendant had no legitimate business reason for these actions.

175.    As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering and extreme and severe mental anguish and emotional anguish and emotional distress, and for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

176.    As a further and proximate result of Defendants' violations of Title VII, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendant, and has thereby incurred and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff. Plaintiff requests that attorney fees be awarded.

177.    Defendants' conduct as described herein was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights. The acts were performed with the knowledge of an employers' economic

power over its employees. Defendants ratified the unlawful conduct of its employees in this action. Consequently, Plaintiff is entitled to punitive or exemplary damages from Defendant.

## FIFTH CAUSE OF ACTION:
## DISCRMINATON ON THE BASIS OF RACE AND GENDER IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW AS AGAINST ALL DEFENDANTS

178.    Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

179.    Defendants through its agents, in particular Director Denninger and Supervisor Pressey, engaged in a pattern of unlawful race and gender discrimination by subjecting Plaintiff to unwelcome harassment through the creation of a hostile work environment based on race and gender, all in violation of the New York State Human Rights Law, (herein after referred to as "NYSHRL"), Executive Sections 290 et. seq.

180.    Defendants Director Denninger and Supervisor Pressey have discriminated against Plaintiff in the terms and conditions of her employment in violation of NYSHRL because of her race and gender by aiding, abetting, inciting, and compelling Defendant RIT to discriminate against Plaintiff in the terms and conditions of her employment in violation of NYSRL.

181.    Defendants, at all times relevant herein, had actual and constructive knowledge of the conduct described above.

182.    The above-described unwelcome harassment and discrimination

created an intimidating, oppressive, hostile and offensive work environment which interfered with the Plaintiff's well being.

183. As a result of the hostile and offensive work environment perpetrated and maintained by Defendants, and Defendants' failure to protect the Plaintiff from further harassment, Plaintiff suffers severe emotional distress.

184. Defendants violated the NYSHRL. by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts and failures to act of the Defendants as described above.

185. Defendants failed to comply with their duty to take all reasonable and necessary steps to eliminate racial and national origin harassment form the workplace and to prevent it from occurring in the future.

186. As a direct and proximate result of Defendants' willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering and extreme and severe emotional distress; and for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to exemplary damages.

<u>SIXTH CAUSE OF ACTION:</u>
<u>RETALIATION UNDER NYSHRL</u>

187. Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

188. Defendants engaged in a pattern of illegal retaliation in violation of

New York State Human Rights Law because Plaintiff had complained about discrimination in the workplace in a continuous fashion since 2008 and then to the New York State Division of Human Rights on October 5, 2011. In or about March of 2009, Plaintiff made a complaint to Supervisor Lezette about the hostile working environment cultivated by Defendants. Specifically, that she was not being allowed access to the dispatch area, which was accessible to other, similarly situated white employees. Shortly thereafter, she was verbally harassed and called a "rat" and a "mole" by her co-workers, behavior which was known to Director Lezette and other supervisors and agents of Defendant. Moreover, Plaintiff's work environment only became increasingly hostile and offensive with every subsequent complaint to management. Plaintiff made several formal and informal complaints to Defendant and their agents from 2009 to the present. Plaintiff was terminated in 2015 in a final act of retaliation.

189.     Defendant had no legitimate business reason for any such actions describe above. After making good faith complaints of discrimination, Plaintiff was subject to retaliatory treatment, including an increasingly severe and pervasive hostile work environment, which was materially adverse. Further, as a result of Defendant's failure to remedy Plaintiff's good faith complaints of discrimination, and the retaliatory harassment suffered by Plaintiff, she was dissuaded from making further complaints of discrimination, which constitutes a materially adverse employment action. There was a causal connection between Plaintiff's engagement in

protected activity and the retaliatory treatment he suffered. Specifically, Plaintiff alleges that the increasingly hostile, abusive, offensive, and retaliatory conduct, as well as being dissuaded from making further complaints of the same, were causally related to his engaging in protected activity on numerous occasions, as outlined above.

190.     As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering and extreme and severe mental anguish and emotional anguish and emotional distress; she has incurred and will continue to incur damages for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

<u>**SEVENTH CAUSE OF ACTION:**</u>
<u>**DISCRIMINATION ON THE BASIS OF RACE AND GENDER IN**</u>
<u>**VIOLATION OF TITLE VII**</u>

191.     Plaintiff repeats and re-alleges every allegation contained in the preceding paragraphs with the same force and effect as though fully set forth herein.

192.     Defendants engaged in practice of discrimination against Plaintiff in violation of TITLE VII on the basis of race (African-American) and gender (woman) in the terms and conditions of her employment by:

   a.  Subjecting her to a hostile work environment;
   b.  Subjecting her to adverse job actions in the form of unfounded disciplinary actions in her employment and her ultimate termination.

193.    As a result of Defendant RIT's illegal actions, Plaintiff has suffered loss of past and future income in the form of salary and benefits, loss of career opportunity, injury to her health, emotional distress, mental anxiety, loss of enjoyment of life, damage to her reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

**Rankin Causes Of Action**

**FIRST CAUSE OF ACTION:**
**HOSTILE ENVIRONMENT AS PER 42 U.S.C. § 1981**

194.    Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

195.    Plaintiff claims she was subject to discrimination, harassment and a hostile work environment by several co-workers and supervisors, motivated by her race and gender under 42. U.S.C. §1981, as set forth in the above stated paragraphs.

196.    The conduct alleged by Plaintiff was so severe and pervasive that a reasonable person in Plaintiff's position would find her work environment to be hostile and abusive as a result of Defendants' failure to remedy the racial hostilities that Plaintiff complained to administrators and human resources personnel on several occasions.

197.    Defendants at all times relevant herein had actual and constructive knowledge of the conduct described in the above-stated paragraphs

through the actions of Director Denninger and Supervisor Pressey, but failed to take any remedial action to put an end to the harassment Plaintiff suffered.

198.    The above-described conduct of Plaintiff's co-workers and supervisors created an intimidating, oppressive, hostile and offensive work environment which interfered with the Plaintiff's well being.

199.    As a result of the discrimination, and hostile work environment perpetrated and maintained by Defendants, and their failure to protect the Plaintiff from further harassment, Plaintiff suffers severe emotional distress.

200.    Defendants violated 42 U.S.C. § 1981 by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of the Defendants as described above.

201.    Defendants failed to comply with their duty to take all reasonable and necessary steps to eliminate racial, ancestral, and/or ethnic harassment from the workplace and to prevent it form occurring in the future.

202.    As a direct and proximate result of Defendants' willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering and extreme and severe emotional anguish and emotional distress; she has incurred and will continue to incur medical expenses for treatment by health care professionals, and for other incidental expenses, and she has suffered and will continue to suffer a

loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages.

203.     As a further and proximate result of Defendants' violations of Section 1981, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendant, and has thereby incurred and will continue to incur, legal fees and costs, the full nature of which are presently unknown to the Plaintiff. Plaintiff requests that attorney fees be awarded.

**SECOND CAUSE OF ACTION:**
**RETALIATION AS PER 42 U.S.C. § 1981**

204.     Plaintiff repeats and re-alleges by reference each and every allegations contained in paragraphs stated above and incorporates the same as though fully set forth herein.

205.     During the course of her employment, Ms. Rankin made several complaints about the discrimination and hostile working environment cultivated by Defendants. Plaintiff's work environment only became increasingly hostile and offensive with every subsequent complaint to management. Plaintiff made several formal and informal complaints to Defendant and their agents.    Plaintiff was terminated in a final act of retaliation.

206.     By formally protesting the conditions of her work place on the basis of race and gender with management and by filing a complaint of discrimination, Plaintiff engaged in protected activity under 42 U.S.C. § 1981.

207.    There was a causal connection between Plaintiff's engagement in protected activity and the retaliatory treatment she suffered.

208.    Defendants, and each of them, engaged in a pattern of illegal retaliation because Plaintiff had complained of race and gender discrimination.

209.    Defendants had no legitimate business reason for these actions.

210.    As a direct and proximate result of Defendants' willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering and extreme and severe mental anguish and emotional anguish and emotional distress; and for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

211.    As a further and proximate result of Defendants' violations of 42 U.S.C. § 1981, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants and each of them, and has thereby incurred and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff. Plaintiff requests that attorney fees be awarded.

212.    Defendants' conduct as described herein was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights. The

acts were performed with the knowledge of Defendants' economic power over Plaintiff. Defendant ratified the unlawful conduct of its employees in this action. Consequently, Plaintiff is entitled to punitive or exemplary damages from all Defendants.

**THIRD CAUSE OF ACTION:**
**GENDER DISCRIMINATION UNDER TITLE VII**

213.     Plaintiff repeats and re-alleges by reference each and every allegations contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

214.     Defendants, through its agent, engaged in a continuing pattern of unremedied gender discrimination by subjecting Plaintiff to unwelcome sexual harassment through the creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended.

215.     Defendant at all times relevant herein had actual and constructive knowledge of the conduct described herein.

216.     The above-described unwelcome sexual harassment created an intimidating, oppressive work environment which interfered with the Plaintiff's well being.

217.     As a result of the hostile and offensive work environment, perpetrated and maintained by Defendant and their failure to protect the Plaintiff from further harassment, Plaintiff suffers from severe emotional distress.

218.      Defendants violated Title VII of the Civil Rights Act of 1964, as amended, by failing to adequately supervise, control, discipline, and/or

otherwise penalize the conduct, acts and failures to act of the defendants as described above.

219.     Defendants failed to comply with their duty to take all reasonable and necessary steps to eliminate sexual harassment from the workplace and to prevent it from occurring in the future.

220.     As a direct and proximate result of the Defendant's willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering and extreme and severe mental anguish and emotional anguish and emotional distress; she has incurred and will continue to incur medical expenses for treatment by health care professionals, and for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

221.     As a further and proximate result of Defendant's violations of Title VII of the Civil Rights Act of 1964, as amended, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants and each of them, and has thereby incurred and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff. Plaintiff further requests that attorney fees be awarded.

222.     Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of Defendant described above was done with

fraud, oppression and malice, with a conscious disregard for her rights, and with the intent, design, and purpose of injuring her. Plaintiff is further informed and believes that Defendant authorized, condoned and/or ratified the unlawful conduct alleged herein, specifically. By reason thereof, Plaintiff is entitled to exemplary damages from all defendants in a sum to be adduced at trial.

**FOURTH CAUSE OF ACTION:**
**RETALIATION UNDER TITLE VII**

223.    Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

224.    Plaintiff, in good faith complained to both management and ultimately the NYSDHR/EEOC of racial and gender discrimination in the workplace. On a routine basis, she filed complaints formally and informally to management and human resources at RIT. Plaintiff's work environment only became increasingly hostile and offensive with every subsequent complaint to management. Plaintiff made several formal and informal complaints to Defendant and their agents from 2006 to the present.

225.    By formally protesting the conditions of her work place with management for the past several years, and by filing her charge of discrimination, Plaintiff engaged in protected activity under Title VII.

226.    Plaintiff was subject to retaliation as a result in the form of denials of overtime hours; obscene comments directed toward her; verbal abuse

by co-workers and management; and termination.

227.     There was a causal connection between Plaintiff's engagement in protected activity and the retaliatory treatment she suffered.

228.     Defendants engaged in a pattern of illegal retaliation because Plaintiff had complained of the racially motivated hostile work environment and discrimination, both formally and informally.

229.     Defendants had no legitimate business reason for these actions.

230.      As a direct and proximate result of Defendants' willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer mental anguish and emotional anguish and emotional distress; and for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

231.     As a further and proximate result of Defendants' violations of Title VII, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendant, and has thereby incurred and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff. Plaintiff requests that attorney fees be awarded.

232.     Defendants' conduct as described herein was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights. The acts were performed with the knowledge of an employers' economic

power over its employees. Defendant ratified the unlawful conduct of its employees in this action. Consequently, Plaintiff is entitled to punitive or exemplary damages from Defendant.

**FIFTH CAUSE OF ACTION:**
**DISCRIMINATION ON THE BASIS OF RACE AND GENDER IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW AGAINST ALL DEFENDANTS**

233.   Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

234.   Defendants through its agents, in particular Director Denninger and Supervisor Pressey, engaged in a pattern of unlawful race and gender discrimination by subjecting Plaintiff to unwelcome harassment through the creation of a hostile work environment based on race and gender, all in violation of the New York State Human Rights Law, (herein after referred to as "NYSHRL"), Executive Sections 290 et. seq.

235.   Defendants Director Denninger and Supervisor Pressey have discriminated against Plaintiff in the terms and conditions of her employment in violation of NYSHRL because of her race and gender by aiding, abetting, inciting, and compelling Defendant RIT to discriminate against Plaintiff in the terms and conditions of her employment in violation of NYSRL.

236.   Defendants, at all times relevant herein, had actual and constructive knowledge of the conduct described above.

237.   The above-described unwelcome harassment and discrimination

created an intimidating, oppressive, hostile and offensive work environment which interfered with the Plaintiff's well being.

238. As a result of the hostile and offensive work environment perpetrated and maintained by Defendants, and Defendants' failure to protect the Plaintiff from further harassment, Plaintiff suffers severe emotional distress.

239. Defendants violated the NYSHRL. by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts and failures to act of the Defendants as described above.

240. Defendants failed to comply with their duty to take all reasonable and necessary steps to eliminate racial and national origin harassment form the workplace and to prevent it from occurring in the future.

241. As a direct and proximate result of Defendants' willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering and extreme and severe emotional distress; and for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to exemplary damages.

## SIXTH CAUSE OF ACTION: RETALIATION UNDER NYSHRL

242. Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

243. Defendant engaged in a pattern of illegal retaliation in violation of

New York Human Rights Law because Plaintiff had complained about discrimination in the workplace in a continuous fashion since 2008, filed charges with New York State Division of Human Rights, and made numerous complaints to Supervisor Lezette and other supervisors about the hostile work environment cultivated by Defendants. Specifically, that she was not being allowed access to the dispatch area, which was accessible to other, similarly situated white employees. Shortly thereafter, she was verbally harassed and called a "rat" and a "mole" by her co-workers, behavior which was known to Lezette and other supervisors and agents of Defendant. Moreover, Plaintiff's work environment only became increasingly hostile and offensive with every subsequent complaint to management. Plaintiff made continued to make several formal and informal complaints to Defendants and their agents from 2009 to the present. Plaintiff was terminated in 2015 in a final act of retaliation.

244. Defendant had no legitimate business reason for any such actions describe above. After making good faith complaints of discrimination, Plaintiff was subject to retaliatory treatment, including an increasingly severe and pervasive hostile work environment, which was materially adverse. Further, as a result of Defendant's failure to remedy Plaintiff's good faith complaints of discrimination, and the retaliatory harassment suffered by Plaintiff, she was dissuaded from making further complaints of discrimination, which constitutes a materially adverse employment action. There was a causal connection between Plaintiff's engagement in

protected activity and the retaliatory treatment he suffered. Specifically, Plaintiff alleges that the increasingly hostile, abusive, offensive, and retaliatory conduct, as well as being dissuaded from making further complaints of the same, were causally related to his engaging in protected activity on numerous occasions, as outlined above.

245.    As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering and extreme and severe mental anguish and emotional anguish and emotional distress; she has incurred and will continue to incur damages for other incidental expenses, and she has suffered and will continue to suffer a loss of earnings and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION:**
**DISCRIMINATION ON THE BASIS OF RACE AND GENDER IN**
**VIOLATION OF TITLE VII**

246.    Plaintiff repeats and re-alleges every allegation contained in the preceding paragraphs with the same force and effect as though fully set forth herein.

247.    Defendants engaged in practice of discrimination against Plaintiff in violation of TITLE VII on the basis of race (African-American) and gender (woman) in the terms and conditions of her employment by:

   a. Subjecting her to a hostile work environment;
   b. Subjecting her to adverse job actions in the form of unfounded disciplinary actions in his employment and her ultimate termination.

248.    As a result of Defendant's illegal actions, Plaintiff has suffered loss of past and future income in the form of salary and benefits, loss of career opportunity, injury to his health, emotional distress, mental anxiety, loss of enjoyment of life, damage to his reputation and humiliation.  Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

WHEREFORE, Plaintiff prays as follows:

A.    That the Court award damages to Plaintiffs and against the Defendants, jointly and severally, in an amount to be determined at trial;

B.    That the Court award punitive damages to Plaintiffs, and against all individual Defendants, in an amount to be determined at trial, and that will deter such conduct by the defendants in the future;

C.    For prejudgment interest and recovery of costs, including reasonable attorneys' fees as stated above;

D.    For any and all other relief to which Plaintiffs may be entitled as a matter of law and equity.

Dated:  December 7, 2015           /s/Prathima Reddy
        Buffalo, New York          Prathima Reddy Esq.
                                   The Reddy Law Firm
                                   *Attorneys for Plaintiffs*
                                   455 Linwood Avenue
                                   Buffalo, New York 14209
                                   (716) 725-0139 (office)
                                   (716) 625-1519 (fax)
                                   preddy@thereddylaw.com